# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# 1:09cv239

| | |
|---|---|
| BRIAN E. ROOT, *et al.*, )<br>)<br>Plaintiffs, )<br>)<br>Vs. )<br>)<br>GENERATIONS LAND COMPANIES, )<br>LLC, *et al.*, )<br>)<br>Defendants. )<br>_____ ) | MEMORANDUM<br>OF DECISION and<br>ORDER |

**THIS MATTER** is before the court on defendant Lee Setzer's Motion for Summary Judgment (#160) and plaintiffs' Motion for Partial Summary Judgment (#163). Also before the court is Lee Setzer's Motion for Attorneys Fees (#161). Having carefully considered such motions, the memoranda of law, and evidentiary materials submitted, and having conducted a hearing, the court enters the following findings, conclusions, and Order denying the motions and setting this matter on for trial.

## FINDINGS AND CONCLUSIONS

### I.   Nature of the Action

Plaintiffs, who all reside in Arizona, are purchasers of lots in two developments located within the WesternDistrict of North Carolina named *The Cove at Flat Gap* (hereinafter "The Cove") and *Chincoteague*. See First Amended Complaint (hereinafter "FAC"), ¶¶ 30, 55. Plaintiffs contend that Defendants Generations Land

Companies, LLC, and Lee Setzer[1] are subject to the *Interstate Land Sales and Fair Disclosure Act* (hereinafter "ILSFDA") as "developers" as that term is defined under the statute; that such developers failed to register such developments with HUD; that the 100 lot exemption from coverage by the requirements of the ILSFDA does not apply here because defendants advertised the developments together as part of a "common promotional plan" as defined by the statute and HUD guidelines; and that they did not timely provide plaintiffs with a property report and failed to include required information in the purchase contracts. For relief under the act, plaintiffs seek recision and what they term "damages."[2] In addition to asserting such federal claims against defendants, plaintiffs have also asserted state-law claims against defendants under the court's supplemental jurisdiction.

## II. Factual Background

Plaintiffs contend that defendants marketed lots in *The Cove* and *Chincoteague* together as part of a common promotional plan (FAC ¶¶ 30-53; Plaintiffs' Exhibits 12, 18, 20); that defendants retained the services of real estate brokers and agents in Arizona to locate potential purchasers and market the properties on their behalf ( FAC ¶ 28, 34-53; Exhibits 20, 27-29; Affidavit of Terry Setzer); that plaintiffs purchased lots in the developments because of the representations of defendants and the Arizona agents ( FAC ¶¶ 53, 55); and that defendants and the Arizona agents "held out the

---

[1] The action against Defendant Terry Setzer is stayed due to filing a petition in Bankruptcy.

[2] Reference is made to the decision of Honorable T. S. Ellis, United States District Judge, in Plant v. Merrifield Town Center Ltd. Partnership, 2010 WL 4674435 (E.D.Va. Nov. 9, 2010), for a discussion and further references as to available remedies under the ILSFDA.

Developments as a limited time investment opportunity....where investors would realize a profit without making a mortgage payment." FAC ¶ 47; Exhibit 18.

In sum, plaintiffs contend that defendants and the real estate agents in Arizona marketed lots in North Carolina to them as investment opportunities. Tthe investment purportedly required little or no down payment, the lots were being represented as offered "below market price," and the developer and/or Arizona agents claimed that plaintiffs would realize a profit without making a mortgage payment on the lots because defendants would deposit 15% of the purchase price with the lenders to cover the first two years of mortgage payments. FAC, ¶¶ 47, 48, & 53. Plaintiffs contend that defendants sold lots to people who could not afford them. The defendants argued at the hearing that no one foresaw in late 2006 the bottom dropping out of the land market in Western North Carolina, that plaintiffs basically bought the lots on margin, that the developments were substantially complete, and that when the margin call was made after the bottom dropped out of the market in 2008, plaintiffs did not have the funds to pay for the lots.

Plaintiffs have moved for partial summary judgment. They argue that ILSFDA applies to such lot sales and that defendants failed to register such developments with HUD or otherwise make disclosures required by the statute. Defendants have filed a response to this motion.

Defendants have also moved for summary judgment as to all claims asserted against them. They contend that they are not subject to the requirements of ILSFDA and that genuine issues of material fact remain as to plaintiffs' supplemental state law

claims. Lee Setzer contends that even if the sales were covered by ILSFDA, while he is a member of the LLC developer, he is not personally a "developer" or an "agent" of the developer under the statute. He further contends that the only allegation in the First Amended Complaint against him, i.e, that he met with "defendant banks to negotiate this financing package," is false and that plaintiffs can produce no evidence to substantiate this contention. Defendants' Memorandum in Support (#162, at 9). Plaintiffs have failed to respond to this motion.

Lee Setzer has also moved for an award of attorneys fees, contending that plaintiffs had no basis for bringing the supplemental claim for unfair and deceptive trade practices as the only relevant allegation against him as to such claimis false. Such motion appears dependent on the court granting Lee Setzer summary judgment on such supplemental claims. Plaintiffs have responded to this motion.

### III. Applicable Standard

Plaintiffs and defendants have moved for summary judgment. Rule 56(a), Federal Rules of Civil Procedure, provides:

> A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed.R.Civ.P. 56(a). The rule goes on to provide procedures for responding to a Motion for Summary Judgment:

**(c) Procedures.**

> **(1) Supporting Factual Positions.** A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> **(2) Objection That a Fact Is Not Supported by Admissible Evidence.** A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> **(3) Materials Not Cited.** The court need consider only the cited materials, but it may consider other materials in the record.
>
> **(4) Affidavits or Declarations.** An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed.R.Civ.P. 56(c).

On a motion for summary judgment, the moving party has the burden of production to show that there are no genuine issues for trial. Upon the moving party's meeting that burden, the non-moving party has the burden of persuasion to establish that there is a genuine issue for trial.

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving [sic] party must come forward with "specific facts

> showing that there is a *genuine issue for trial*." Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial."

Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted; emphasis in the original) (quoting Fed. R. Civ. P. 56). There must be more than just a factual dispute; the fact in question must be material and readily identifiable by the substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

By reviewing substantive law, the court may determine what matters constitute material facts. Anderson, supra. "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." Id. at 248. A dispute about a material fact is "genuine" only if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." Id. The court must credit factual disputes in favor of the party resisting summary judgment and draw inferences favorable to that party if the inferences are reasonable, however improbable they may seem. Cole v. Cole, 633 F.2d 1083, 1092 (4th Cir. 1980). Affidavits filed in support of a Motion for Summary Judgment are to be used to determine whether issues of fact exist, not to decide the issues themselves. United States ex rel. Jones v. Rundle, 453 F.2d 147 (3d Cir. 1971). When resolution of issues of fact depends upon a determination of credibility, summary judgment is improper. Davis v. Zahradnick, 600 F.2d 458 (4th Cir. 1979).

In determining whether a genuine issue of material fact exists, the admissible evidence of the non-moving party must be believed and all justifiable inferences must

be drawn in his or her favor. Anderson, supra, at 255. In the end, the question posed by a summary judgment motion is whether the evidence "is so one-sided that one party must prevail as a matter of law." Id., at 252.

In this case, cross-motions for summary judgment have been filed. Where cross motions for summary judgment are filed, such motions are

> no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist. If any such issue exists it must be disposed of by a plenary trial and not on summary judgment.
> In short, the mere fact that both parties seek summary judgment does not constitute a waiver of a full trial or the right to have the case presented to a jury.

Wright & Miller, 10A Fed. Prac. & Proc. Civ.3d § 2720.

## IV. Discussion

### A. ILSFDA

Both plaintiffs and defendants have moved for summary judgment on plaintiffs' First Cause of Action, which is brought under the ILSFDA. Plaintiffs contend that both Lee Setzer and Generations were "developers" as defined by the Act, that the ILSFDA applies to the developments in which they bought lots despite neither development containing 100 lots, and that they are entitled to recision and other damages for defendants' alleged failure to comply with the act.

For the reasons discussed below, the court finds that genuine issues of material fact exist as to whether these defendants were developers and whether the subdivisions are even covered by the ILSFDA.

### 1. Developers or Agents

The ILSFDA provides that it "shall be unlawful for any developer or agent, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce, or of the mails" to conduct certain specified prohibited activity as to any lot covered by the act. 15 U.S.C. § 1703(a).

First, plaintiffs contend that both Generations and Lee Setzer were developers within the meaning of the statute. NThe Act defines "developer" as "any person who, directly or indirectly, sells or leases, or offers to sell or lease, or advertises for sale or lease any lots in a subdivision." 15 U.S.C. § 1701(5). It is undisputed that Defendant Generations was a developer; however, Lee Setzer contends that he was not a developer.

Second, plaintiffs also contend that Lee Setzer was an "agent" of the developer under the Act. The ILSFDA defines "agent" as "any person who represents, or acts for or on behalf of, a developer in selling or leasing, or offering to sell or lease, any lot or lots in a subdivision . . . ." 15 U.S.C. 1701(6). Lee Setzer contends that he was also not an agent.

The Court of Appeals for the Fourth Circuit held in Kemp v. Peterson, 940 F.2d 110 (4th Cir. 1991), as follows:

> officers, directors, and participating planners may be held individually liable for violations of the Act, notwithstanding the absence of a clause in the Act establishing liability for "controlling stockholders, officers and directors." *McCown v. Heidler*, 527 F.2d 204, 207 (10th Cir.1975) (*quoting Adolphus v. Zebelman*, 486 F.2d 1323, 1325 (8th Cir.1973). To hold otherwise would defeat the purpose of the Act, since it is the officers of the corporation who are behind the alleged fraud. *See also SEC v. First Am. Bank & Trust Co.*, 481 F.2d 673 (8th Cir.1973).

-8-

Id., at 113. One court, in interpreting and distinguishing Kemp, held as follows:

> [t]he Court in *Kemp* stated that "it is the officers of the corporation who are behind the alleged fraud." *Id.*, 940 F.2d at 113. This Court interprets that sentence to refer to the officers of the corporation before the Court in *Kemp v. Peterson*, not all officers of any corporation accused of fraud.

Santidrian v. Landmark Custom Ranches, Inc., 2008 WL 4571820, 3 (S.D.Fla.) (S.D.Fla. 2008). The court then held that

> [w]hile an individual could be a "developer," a "developer," is "any person who, directly or indirectly, sells or leases, or offers to sell or lease, or advertises for sale or lease any lots in a subdivision." 15 U.S.C. ¶ 1701(5). An individual does not become personally liable under the ILSFDA without some personal involvement in the sale or offer to sell.

Id. This court finds Santidrian to be in harmony with Kemp, inasmuch as a showing that it was "the officers of the corporation who [were] behind the fraud," Kemp, supra, would be sufficient to show that an officer or director was acting as a developer or agent within the definitions found under Sections 1701(5) & (6); likewise, a showing of "some personal involvement in the sale or offer to sell," Santidrian, supra, by an officer or director (or a member of an LLC) would also be consistent with such definitions.

In determining whether Lee Setzer could be included as a developer or agent subject to the ILSFDA, remedial statutes are broadly read and given a liberal interpretation as to who and what conduct Congress intended to regulate.

> Remedial statutes are liberally construed to suppress the evil and advance the remedy. The policy that a remedial statute should be liberally construed in order to effectuate the remedial purpose for which it was enacted is firmly established.
> * * *
> A liberal construction is ordinarily one which makes the statutory rule or principle apply to more things or in more situations than would

be the case under a strict construction.

Sutherland Statutes & Statutory Constr. § 60:1 (footnotes omitted). Indeed, the Court of Appeals for the Fourth Circuit has held as to ILSFDA that "[t]he language of the Act is meant to be read broadly to effectuate" the statutory purpose of prohibiting fraud and to protecting land purchasers. Olsen v. Lake Country, Inc., 955 F.2d 203, 205 (4th Cir.1991).

While Lee Setzer argues that he had absolutely no role in the sale of lots to these plaintiffs, they point to the following as evidence upon which a finder of fact could determine that he had some personal involvement in the sales to them or the offer to sell, to wit, he:

(1) furnished a substantial part of the capital to the purchase and sale of the developments, Plaintiffs' Exhibit 16, Affidavit of Lee Setzer;

(2) established the asking price for each lot, Exhibit 20;

(3) obtained the necessary local permits and financing for the developments, Affidavit of Lee Setzer;

(4) signed a significant majority of the deeds and settlement statements necessary in the sale of the lots to plaintiffs, Plaintiffs' Exhibits 1-3, 6-11;

(5) paid the Arizona brokers, Plaintiffs' Exhibits 27-28;

(6) received half the profits from the sale of the developments, Plaintiffs' Exhibits 16, 24-26;

(7) was responsible for actually developing the developments, Exhibit 20, Defendants' Answer to the First Amended Complaint, Affidavits of Lee Setzer and Terry Setzer; and

(8) highlighted his personal story and experience on Generations' website, Exhibit 12.

Such evidence constitutes some evidence upon which a finder of fact could determine that Lee Setzer had "some personal involvement in the sale or offer to sell." Santidrian, supra.

While plaintiffs have made such an initial showing, the court cannot conclude, however, that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Although such evidence is sufficient to require resolution by the fact finder as to whether Lee Setzer had some personal involvement in the sales or offer to sell, it is not conclusive as a reasonable fact finder could certainly determine that he was neither a developer nor an agent of the developer . Conversely, defendants have forecast evidence of a lack of personal involvement of Lee Setzer, which may also be probative. The court cannot, however, find that the evidence is so one sided that either party must prevail as a matter of law.

### 2. The 100 Lot Exemption

Defendants contend that the ILSFDA claim must be dismissed as plaintiffs cannot prove that these developments are covered by the Act. As opposed to broadly reading who and what conduct is covered by a remedial act, *exemptions* from remedial statutes must be narrowly read. Long v. Merrifield Town Center Limited Partnership, 611 F.3d 240, 245 (4th Cir. 2010).

A development is exempt from the ILSFDA where the subdivision contains fewer than 100 lots. 15 U.S.C. § 1702(b)(1). It is undisputed that *The Cove* contains 86 lots and that *Chincoteague* contains 53 lots, making neither subdivision standing alone subject to the Act. FAC, ¶ 32; Answer, ¶ 10.

Under the Act, subdivisions having fewer than 100 lots can be aggregated with other subdivisions to meet the 100 lot threshold where the lots were sold as part of a "common promotional plan," which means:

> a plan, undertaken by a single developer or a group of developers acting in concert, to offer lots for sale or lease; where such land is offered for sale by such a developer or group of developers acting in concert, and such land is contiguous or is known, designated, or advertised as a common unit or by a common name, such land shall be presumed, without regard to the number of lots covered by each individual offering, as being offered for sale or lease as part of a common promotional plan.

15 U.S.C. § 1701(4). If the court were to apply the definition of "common promotional plan" as contained in the statute to the evidence submitted, it is apparent that even though *The Cove* and *Chincoteague* were promoted to these plaintiffs through common brochures, plaintiffs have presented no evidence that these developments were either "contiguous" or were "known, designated, or advertised as a common unit or by a common name." Id.

It is only when HUD guidelines are reviewed that it becomes plausible that these two subdivisions could be aggregated to meet the 100 lot threshold of the ILSFDA. While the court understands defendants' argument that the court should not apply administrative guidelines that were not vetted by a representational body in construing a federal statutory scheme, the Supreme Court requires this court to give "some deference" to internal agency guidelines, a standard that recognizes the fact that agency guidelines (as opposed to publicly noticed agency regulations) are not subject to the rigors of the *Administrative Procedure Act*. Reno v. Koray, 515 U.S. 50, 61 (1995). The agency guidelines applicable here provide, as follows:

**(b)** Common Promotional Plan means any plan undertaken by a single developer or a group of developers acting together to offer lots for sale or lease. A common promotional plan is presumed to exist if land is offered by a developer or a group of developers acting in concert and the land is contiguous or is known, designated, or advertised as a common development or by a common name. The number of lots covered by each individual offering has no bearing on whether or not there is a common promotional plan.

Other characteristics that are evaluated in determining whether or not a common promotional plan exists include, but are not limited to: a 10% or greater common ownership; same or similar name or identity; common sales agents; common sales facilities; common advertising; and common inventory. The presence of one or more of the characteristics does not necessarily denote a common promotional plan. Conversely, the absence of a characteristic does not demonstrate that there is no common promotional plan.

Two essential elements of a common promotional plan are a thread of common ownership or developers acting in concert. However, common ownership alone would not constitute a common promotional plan. HUD considers the involvement of all principals holding a 10 percent or greater interest in the subdivision to determine whether there is a thread of common ownership. If there is common ownership or if the developers are acting in concert, and there is common advertising, sales agents or sales office, a common promotional plan is presumed to exist. Experience has led to the conclusion that sales agents generally will direct a prospective purchaser to any or all properties in inventory to make a sale.

The phrase "common promotional plan" is most often misunderstood by those who believe that "promotion" implies an enthusiastic sales campaign. Any method used to attract potential purchasers is, in fact, the "promotional plan". For example, direct mail campaigns and free dinners may be the promotional plan of one developer while another developer's promotion may be limited to classified advertisements in a local newspaper.

Brokers selling lots as an agent for any person who is required to register are required to comply with the requirements of the Act for those sales. Brokers selling lots for different individuals who do not own enough lots to come within the jurisdiction established by the Act generally would not be considered to be offering lots pursuant to a common promotional plan as long as they are merely receiving the usual real estate

commission for such sales. If the broker has an ownership interest in the lots or is receiving a greater than normal real estate commission, the broker may be offering lots pursuant to common promotional plan and may be required to comply with the requirements of the Act.

61 Fed. Reg. 13596-01, at 13602; c.f. Plaintiffs' Exhibit 13.[3] The court will give such factors some deference.

Applying these guidelines to the evidence proffered, it is not clear that either side is entitled to summary judgment as the evidence proffered could support a determination by a fact finder for either side. Plaintiffs application of its proffer to such guidelines is less than clear as it is apparent under both the statutory framework as well as the administrative guidelines that defendants' subdivisions are neither contiguous nor marketed under the same name. Put another way, the guidelines (unlike the "Q&A" summary referenced by plaintiffs) appears to recognize the requirement of the developments being contiguous or marketing under a common name. On the other hand, plaintiffs' proffer leaves room for a finder of fact to determine that defendants did market the properties under a common promotional plan, because under the guidelines "[i]f there is common ownership or if the developers are acting in concert, and there is common advertising, sales agents or sales office, a common promotional plan is presumed to exist." Id.

A genuine issue of material fact is one which "may reasonably be resolved in favor of either party" and thus is properly resolved by the finder of fact. Anderson v.

---

[3] The court notes that the three factors proffered by plaintiffs as being the HUD guidelines appear to be drawn from a HUD "Q&A" sheet maintained on its public website. See Plaintiffs' Ex. 13. By relying on such publication, plaintiffs have left out the factors of "common inventory" and "same or similar name or identity," which can be found by reviewing 61 Fed. Reg., at 13602

Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). The court will, therefore, deny the cross motions for summary judgment on the ILSFDA claim.

## B. State Law Claims

Defendant Lee Setzer has also moved for summary judgment on plaintiffs' state law claims. Motion for Summary Judgment (#160), at p. 1. Lee Setzer has supported such motion with evidentiary materials attached to his motion, (#169-1 through #160-11), and submitted a memorandum of law in support of such motion. Memorandum of Law (#162). In such memorandum, Lee Setzer provides the reasons why he believes he is entitled to summary judgment as to each supplemental claim alleged by plaintiffs. Id., at pp. 9-11. There is no response to such motion by plaintiffs.

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56 goes on to require that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) ***citing to particular parts of materials in the record***, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed.R.Civ.P. 56(c)(emphasis added).

While plaintiffs have not responded, Lee Setzer did not heed Rule 56(c)'s requirement concerning referencing evidence. By way of example, Lee Setzer makes the following argument in support of his motion for summary judgment on plaintiff's

negligence claim:

> D. There is no genuine issue as to any material fact related to the negligence claim. The complaint does not allege that Lee Setzer had any dealings with any of the plaintiff [*sic*] which would give rise to any "common law duty to use care and skill" with regards to plaintiffs. Amended Complaint paragraph 230. The record reveals that if Lee Setzer had any duty toward any of the plaintiffs, he did not breach that duty. Lee Setzer never made any representations to any of the plaintiffs; therefore, he did not negligently make any false representations.

Memorandum in Support, at p.10. In the "Facts" portion of Lee Setzer's brief, he states, as follows:

> Lee Setzer never took part in a conference telephone call and he never had any communications with any plaintiff. In discovery each plaintiff denies any conversation or communication with Lee Setzer.

Id., at p. 3. Again, what is missing is any reference to admissible evidence supporting such proffer. Rule 56(c) makes it clear that a moving party must support factual contentions by specifically referencing the evidentiary material submitted, preferably by exhibit and page number. See also L.Cv.R. 7.1(C). While Lee Setzer has provided some citations to the Affidavit of Terry Setzer, the court cannot find the brief to be in compliance with Rule 56(c).

\* \* \*

The court has pointed out plaintiffs' lack of response and Lee Setzer's lack of reference not to berate counsel, but to point out the difficulty in deciding important issues on an incomplete record. Despite plaintiffs' oversight in not filing a brief, the court is without a sufficient record to determine whether genuine issues of material fact remain as to plaintiffs' supplemental claims against Lee Setzer. That is not to say, however, that Lee Setzer has not made excellent points concerning the lack of

specificity in alleging how he supposedly committed each state-law claim. While the motion will be denied without prejudice to raising the substance at the conclusion of plaintiffs' evidence in accordance with Rule 50, plaintiffs should carefully consider whether they have made sufficient allegations or have sufficient evidence to pursue their state law claims from this point forward.

### C. Attorneys Fees

Lee Setzer has also moved for attorney's fees. Motion for Award of Attorney's Fees (#161). Such motion is premised on the court first awarding summary judgment in such defendant's favor on plaintiffs' unfair and deceptive trade practices claim. As such has not occurred, the motion will be denied without prejudice.

### ORDER

**IT IS, THEREFORE, ORDERED** that Lee Setzer's Motion for Summary Judgment (#160), plaintiffs' Motion for Partial Summary Judgment (#163), and Lee Setzer's Motion for Attorneys Fees (#161) are **DENIED** without prejudice, and the Clerk of Court is respectfully instructed to calendar this action for trial in Asheville as soon as possible.

Signed: April 20, 2011

Max O. Cogburn Jr.
United States District Judge